## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL EDWARD KENNEDY          *

Petitioner          *

v.          *          Civil No. CCB-14-1435

UNITED STATES PAROLE COMMISSION   *

Respondent          *

***

### MEMORANDUM

Michael Edward Kennedy contests his continued federal parole supervision via a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  A response opposing the petition was filed, (ECF No. 7), and petitioner, through counsel, has filed a reply, (ECF No. 14).  The court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons described below, Kennedy's petition will be denied.

### Background

Kennedy was convicted in the United States District Court for the Southern District of California of murder while perpetrating a rape and carnal knowledge of a female against her will in violation of 18 U.S.C. §§ 1111(b), 2031.  (Petition 6, ECF No. 1.)  Kennedy was sentenced to serve life imprisonment on January 15, 1981.[1]  On January 25, 2000, the United States Parole Commission released him on parole.  (*See* Petition Ex. 3, Prehearing Assessment & Hearing

---

[1] The circumstances of Kennedy's offense were summarized by the Fourth Circuit Court of Appeals as follows:

> In December 1980, a federal jury in California convicted Michael Kennedy of raping and murdering Maria Lopez de Felix.  At the time of the crime, Kennedy was employed as an Immigration and Naturalization Officer, and the victim was a Mexican national who had attempted to enter the United States illegally.  According to the facts presented at trial, Kennedy was escorting Lopez de Felix to the Mexican border when he led her to an unoccupied building, raped and strangled her, and left her body on an adjacent walkway.  Following his conviction, Kennedy was sentenced to life imprisonment.

*Kennedy v. Allera*, 612 F.3d 261, 263 (4th Cir. 2010).

Summary 1, ECF No. 1-4.)  Kennedy states that during the period of time he has been under

parole supervision he has "had no violations of parole" and remained consistently employed until

he was laid off in February of 2011 "due to an economically forced closure of his employer's

facility."  (Petition 12.)

Kennedy received early termination review hearings from the United States Parole

Commission ("the Commission") in 2005, 2007, and 2008, but received no hearings from 2009

through 2012.  *Kennedy v. U.S. Parole Comm'n*, Civ. No. CCB-13-19, 2013 WL 4517270, at *1

(D. Md. Aug. 23, 2013).

The Commission held an early termination review hearing on June 27, 2013, pursuant to

this court's order.  *See id.* at *3; (Petition Ex. 2, Hearing Tr. 1, ECF No. 1-3).  Counsel

represented Kennedy at that hearing, and Kennedy's wife spoke on his behalf.  (*See* Hearing Tr.

3, 25.)  Kennedy asserts that he produced undisputed evidence at the hearing establishing that he:

had not incurred any infractions of the terms of his supervision; had passed several polygraph

examinations since 2006; had been registered as a sex offender for five years with updates to his

registration every three months; had lived in the same residence for nine years; had been married

for seven years; had made every effort to remain employed; and was otherwise in full

compliance with his parole conditions.  (*See* Petition 13; Hearing Tr. 6–7, 11–13, 15, 17.)  In

addition, Kennedy indicates his parole officer, Edwin Zahler, Jr., stated that Kennedy was on

high supervision and was "100 percent" compliant with the conditions of his parole, but

recommended that Kennedy remain on supervision "due to the originating events."  (Petition 13;

Hearing Tr. 20–21.)  Kennedy maintains that Zahler made this recommendation because the

Commission forced him to do so.  (*See* Petition 13.)  Kennedy states that the hearing examiner,

Sandra Hylton, made the following statement:

> I don't talk about the offense, that's not important at this point because you've served the time.  You are given the sentence, you've served the time.  So what we're looking at now is what you're adjustment has been in the community.  And more importantly, how your adjustment has been since your last hearing which was in [2008].

(*Id.*; Hearing Tr. 4–5.)  Hylton recommended termination of Kennedy's parole supervision, stating he had done everything asked of him and had exceeded the qualifications necessary to justify termination.  (*See* Hearing Tr. 32–33.)  Despite Hylton's recommendation, the Commission issued a notice of action on September 4, 2013, denying Kennedy's request for early termination of parole.  (Petition Ex. 1, Notice of Action 1, ECF No. 1-2.)  Kennedy asserts the denial was based on his originating offense as well as "decade-old sexual harassment allegations."[2]  (Petition 14.)  The National Appeals Board affirmed that decision on March 20, 2014.  (*Id.*; Response Ex. D, Bd. of Appeals Decision 1, ECF No. 7-4.)

Kennedy concedes the scope of review of the termination proceeding is limited under 18 U.S.C. § 4218(d).  (*See* Petition 14.)  He nevertheless asserts that this court should hold that decision unlawful on the ground that it involves a "flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion."  (Petition 14 (quoting *Glumb v. Honsted*, 891 F.2d 872, 873 (11th Cir. 1990) (per curiam))).  Specifically, Kennedy argues that

---

[2]  The allegations of sexual harassment were summarized by this court as follows:

> [O]n February 28, 2000, local law enforcement officers notified Kennedy's probation officer that Kennedy had made multiple visits and phone calls to a twenty-six-year-old clerk in Congressman Wayne Gilchrest's Salisbury office, and had left her a disturbing letter conveying his romantic interest in her.  On February 25, 2004, a lieutenant in the San Diego County Sheriff's Department contacted the Commission with information relating to an unsolved 1979 murder in which Kennedy was named as a suspect.  The lieutenant also provided information that Kennedy had been terminated from his job as a hotel restaurant manager in November 2000 after female co-workers reported that he sexually harassed them.  Finally, the lieutenant submitted a December 2002 Maryland State Police report demonstrating that Kennedy, then employed at Wal-Mart, had repeatedly followed the wife of a state police officer through the store as she shopped and, on one occasion, had followed her as she left the store.

*Kennedy v. Allera*, Civ. No. L-05-129, 2008 WL 9018746, at *2 n.2 (D. Md. June 10, 2008), *aff'd*, 612 F.3d 261 (4th Cir. 2010).

the Commission violated 18 U.S.C. § 4211(c)(1) when it determined there was a likelihood he would engage in conduct violating criminal law without sufficient evidence to support that conclusion.  According to Kennedy, the nature of his underlying offense and decade-old allegations of sexual harassment are insufficient to deny termination.  (*See* Petition 15–19.) Kennedy further claims that the Commission violated 28 C.F.R. § 2.43, insofar as the Commission failed to consider expressly his risk categorization and record on parole, as that regulation requires.  *See* 28 C.F.R. § 2.43(g)(1).  Lastly, Kennedy argues that the Commission violated his "due process right to be free of an arbitrary and capricious decision."  (Petition 21–24.)

## Standard of Review

Under the Parole Act,[3] the court's review of certain decisions made by the Commission is limited.  *See* 18 U.S.C. § 4218(d); *see also* 18 U.S.C. § 4203(b).  "Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981) (citing *Ness Inv. Corp. v. U.S. Dep't of Agric.*, 512 F. 2d 706, 715 (9th Cir. 1975)).  Such discretionary decisions "are unreviewable even for abuse of discretion."  *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 982 (9th Cir. 2002). Whether to terminate early supervision is a decision committed to the Commission's discretion. *See Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 951 (8th Cir. 2008) ("[U]nder section 4211(c)(1), parole remains subject to the Commission's discretionary finding of rehabilitation . . . ."); *Valona v. U.S. Parole Comm'n*, 235 F.3d 1046, 1048 (7th Cir. 2000) (explaining that 18

---

[3] *See* 18 U.S.C. §§ 4201–4218, *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, §§ 218(a)(5), 235(b)(1)(A), 98 Stat. 1837, 2027 (1984).  There is no dispute that the Parole Act applies to Kennedy.

U.S.C. § 4211(c)(1) "effectively hands discretion to the Parole Commission").  Absent violation

of some constitutional, statutory, or regulatory restriction, the substance of such a decision is

thus unreviewable.  *See Kennedy v. Reilly*, Civil No. L-09-1802, 2010 WL 761204, at *2 (D. Md.

Mar. 1, 2010).[4]

### Analysis

As noted, Kennedy asserts violations of 18 U.S.C. § 4211(c) and 28 C.F.R. § 2.43(b), as

well as the denial of due process.  Each of those arguments fails.

### A.  Statutory Requirements

Under 18 U.S.C. § 4211(c)(1), a parolee is entitled to a preliminary review of his

continued supervision five years after his release on parole.  That review requires evaluating

whether "such supervision should not be terminated because there is a likelihood that the parolee

will engage in conduct violating any criminal law."  18 U.S.C. § 4211(c)(1).  If the Commission

declines to terminate supervision at that preliminary review, then the statute requires

reconsideration of that same question at least every two years thereafter.  *See* 18 U.S.C. §

4211(c)(2).  Kennedy argues that such biennial review is limited to recent conduct that postdates

his last termination hearing.  Accordingly, he argues the Commission's reliance on his original

offense and old allegations of sexual harassment violated the statute.  (*See* Petition 19; Reply 7.)[5]

Kennedy concedes that 18 U.S.C. § 4211(c) does not expressly limit the Commission to

consideration of a parolee's recent conduct.  (*See* Reply 7.)  Instead, he argues that such a

limitation is implied by the statute's requirement of biennial review; to hold otherwise, he

continues, would render that requirement "meaningless."  (*Id.*)  Not so.  Mandating periodic

---

[4] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.
[5] To the extent Kennedy premises his argument on the Commission's *sole* reliance on those factors, the record contradicts his reading of it; the Commission expressly noted that his "performance on supervision has improved," indicating that it took account of his recent conduct.  (Notice of Action 1.)

review of a parolee's continued supervision forces the Commission to deliberate without restricting the temporal scope of the evidence it considers.  In making its decision, it may take into account not only the original offense but also the period of time that has elapsed with or without misconduct.

Even if the statute were ambiguous—which it is not—then regulations implementing the Parole Act confirm that it does not restrict the Commission to consideration of conduct arising since its last review.  Those regulations command the Commission to consider a parolee's "risk category" and record on parole when evaluating the possibility of early termination.  *See* 28 C.F.R. § 2.43(g)(1).  Categorizing parolees according to risk requires calculating a "salient factor score," which takes account of conduct that often long predates the Commission's last review of a parolee's continued supervision.  *See Daniel v. Fulwood*, 766 F.3d 57, 59 n.2 (D.C. Cir. 2014) ("The salient factor score is based on such factors as the number of the prisoner's prior convictions, the number of his prior commitments to facilities, and his age at the commencement of his prior offenses and commitments."); 28 C.F.R. § 2.20.  That risk category, in turn, guides the Commission's decision whether to terminate supervision early,  *see* 28 C.F.R. § 2.43(g)(1)(i), although termination is recommended even for parolees outside the lowest risk category who have "completed three continuous years of supervision free from an incident of new criminal behavior or serious parole violation," 28 C.F.R. § 2.43(g)(1)(ii).  Whatever a parolee's "risk category" and record on parole, however, the Commission may disregard the regulation's recommendation on the basis of "case-specific factors," 28 C.F.R. § 2.42(g)(1), which the regulation defines to include not only "the current behavior of the parolee" but also "the parolee's background and criminal history," 28 C.F.R. § 2.43(h).  In other words, the regulation contemplates consideration of conduct that often predates the last review, both in calculating a

6

parolee's risk category and in authorizing the Commission to decide a parolee's status on the basis of case-specific factors.

For all these reasons, 18 U.S.C. § 4211(c) does not restrict the Commission to consideration of Kennedy's recent behavior.  Accordingly, its decision to continue his parole on the basis of his original offense and decade-old allegations of sexual harassment did not violate that statute.

### B. Regulatory Requirements

As noted, 28 C.F.R. § 2.20(g)(1) guides the Commission's decision whether to terminate parole early, recommending early termination for parolees with a successful record on parole and/or low risk categorization.  Kennedy argues that his parole must be terminated under that regulation in light of his membership in the lowest risk category and long, successful record on parole.  But that regulation authorizes the Commission to refrain from an otherwise-recommended early termination on the basis of "case-specific factors," 28 C.F.R. § 2.42(g)(1), including "the parolee's background and criminal history," 28 C.F.R. § 2.43(h).  That is exactly what the Commission did here.  It cannot be found to have violated its own regulation by refusing to terminate early Kennedy's supervision in light of the severity of his underlying offense and allegations of sexual harassment that date from the beginning of his parole.

Kennedy asserts that the Commission's failure to consider expressly in its decision denying early termination his successful record on parole or low risk level breached the regulatory mandate to do so.  As he emphasizes, the regulation provides that "the Commission *shall* consider" such factors when evaluating the possibility of early termination.  *See* 28 C.F.R. § 2.43(g)(1) (emphasis added).  The Commission's decision was not, however, entirely silent as to Kennedy's record on parole; it noted that his "performance on supervision ha[d] improved"—

presumably in reference to the sexual harassment allegations that marred his early years of parole—confirming that it considered his recent record.  (Notice of Decision 1.)  Because the regulation recommends early termination on the basis of three continuous years of supervision without incident even for higher-risk parolees, *see* 28 C.F.R. § 2.43(g)(1)(ii), the Commission's failure to refer expressly to Kennedy's low risk category had no bearing on the disposition recommended by the regulation.  In any case, the Commission's decision was premised on "the hearing conducted on June 27, 2013," (Notice of Decision 1), in which Kennedy's successful compliance with his conditions of parole was discussed at length.  Although the Commission's discussion of his record on parole was terse, it is sufficient to demonstrate that the matter was considered, as the regulation requires.  Kennedy's contrary argument might carry more force if the abuse-of-discretion standard were applicable here.  *See United States v. Dinkins*, 691 F.3d 358, 374 (4th Cir. 2012) (noting, in the trial context, that "a court's failure to state a basis for its decision sufficient to permit appellate review may constitute an abuse of discretion").  But that standard does *not* apply.  *See Benny*, 295 F.3d at 982.  There is thus no basis for concluding the Commission violated its own regulation in light of its express consideration of Kennedy's recent record.

### C. Constitutional Requirements

Last, Kennedy claims the Commission's decision denied him due process.  Assuming, without deciding, that "the mandatory language in § 4211(c)(1) creates an expectation of parole termination that is entitled to some procedural protections," that expectation is satisfied by a proper hearing at statutorily prescribed intervals.  *Benny*, 295 F.3d at 984.  Because such a hearing was held here, Kennedy received all the process he was due.[6]

---

[6] The statute  incorporates by reference the procedural protections described in 18 U.S.C. § 4214(a)(2).  *See* 18 U.S.C. § 4211(c)(1).  That provision, in turn, mandates notice to a parolee of an upcoming hearing, the option of

Kennedy nevertheless characterizes the Commission's decision to deny him early termination as arbitrary and capricious, and thus a denial of due process. He premises that characterization on the Commission's alleged failure to "exercis[e] its discretion at all." (Reply 5 (alteration in original) (*quoting Luther v. Molina*, 627 F.2d 71, 76 (7th Cir. 1980))). The Commission, however, declined to terminate Kennedy's parole on the basis of the severity of his underlying offense and allegations of sexual harassment dating from the years immediately following his release. In other words, it *did* exercise its discretion.

Kennedy accurately observes that "he will never be able to erase from his record" his underlying offense or subsequent allegations of harassment. (Reply 5.) He thus speculates that the Commission will never terminate his parole early. (*See id.*) Kennedy's conclusion does not follow from that observation, however. With the passage of time and Kennedy's continued good conduct, the significance of those two stains on his record may well decrease. Kennedy's frustration is understandable, particularly since the Commission declined to follow the recommendation of the Hearing Examiner to terminate his supervision. But it is for the Commission to decide in its discretion when time and ongoing good conduct will outweigh his original offense and the harassment accusations in estimating the "likelihood that [Kennedy] will engage in conduct violating any criminal law." 18 U.S.C. § 4211(c)(1).

### Conclusion

For the reasons stated above, Kennedy's petition will be denied.

A separate order follows.

| | |
|---|---|
| February 13, 2015 | /S/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

representation by counsel, and opportunities to appear, to testify, to present witnesses and evidence, to hear evidence against him, and to cross-examine adverse witnesses. *See* 18 U.S.C. § 4214(a)(2). Kennedy's hearing appears to have satisfied all those requirements. He does not argue otherwise.